IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| BRIDGET M. SHAW,<br><br>    Plaintiff<br><br>  VS.<br><br>MICHAEL J. ASTRUE,<br>S.S. Commissioner,<br><br>    Defendant | NO. 5:07-CV-434 (CAR)<br><br>**SOCIAL SECURITY APPEAL** |

# O R D E R

This is a review of a final decision of the Commissioner of Social Security denying plaintiff BRIDGET M. SHAW's claim for benefits under the Social Security Act, 42 U.S.C. § 423. On February 11, 2003, plaintiff Shaw filed an application for Social Security Disability Benefits alleging disability beginning August 29, 2002, due to a variety of medical conditions. The application was denied initially and upon reconsideration. The plaintiff requested a hearing before an administrative law judge ("ALJ") which was held on December 16, 2004. In a decision dated June 13, 2005, the ALJ found that the plaintiff was not disabled.

Following this decision, and while the matter was pending review by the Appeals Council, the plaintiff filed another application for benefits which was reviewed and combined with the first. Following their review of the instant file, the Appeals Council vacated the ALJ's unfavorable decision and remanded the case for further proceedings. Accordingly, a second hearing was held before an ALJ on October 25, 2006. Plaintiff Shaw's claim was again denied in a decision dated December 6, 2006. The Appeals Council denied the plaintiff's subsequent request for review on September 14, 2007, making the hearing decision the final decision of the Commissioner. Thereafter, on November 16, 2007, the plaintiff filed the instant Complaint. Tab #1.

LEGAL STANDARDS

The Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971).

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Court must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The Court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth, supra*, at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id*.

The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). However, the claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate that she suffers from an impairment that prevents her from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. §§

---

[1] Credibility determinations are left to the Commissioner and not to the courts. **Carnes v. Sullivan**, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. **Wheeler v. Heckler**, 784 F.2d 1073, 1075 (11th Cir. 1986). *See also* **Graham v. Bowen**, 790 F.2d 1572, 1575 (11th Cir. 1986).

404.1 *et seq*.

Under the regulations, the Commissioner determines if a claimant is disabled by a five step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevents the performance of any other work.

In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each impairment, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence presented is grounds for reversal. *Id*.

## DISCUSSION

### Claim that ALJ Improperly Failed to Consider the Opinion of Dr. Muller

In a brief in support of her Complaint, plaintiff Shaw contends that the ALJ erred by failing to consider the opinion of Dr. Muller, a consultative psychologist, whose findings appeared in the record. Tab #18. To support this argument, plaintiff relies almost entirely upon an excerpt from the ALJ's decision wherein he stated that "the claimant is limited to performing simple tasks only, with no more than limited public contact."

According to plaintiff Shaw, however, Dr. Muller's findings contained a much broader spectrum of limitations than are accounted for in the aforementioned statement by the ALJ. Specifically, plaintiff Shaw refers to Dr. Muller's opinion that she was seriously limited, but not precluded, from dealing with the public, interacting with supervisors, and dealing with work stresses. Moreover, Plaintiff Shaw points to Dr. Muller's conclusion that her abilities in the areas of relating to co-workers, functioning independently, maintaining attention, behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability were limited but satisfactory. Thereafter, the plaintiff restated her position by asserting that the ALJ not only failed to properly reject the above listed limitations, he completely ignored them.

The undersigned disagrees. The ALJ's finding that plaintiff Shaw is limited to performing only simple tasks with only limited contact with the public is not contradicted by nor in need of expansion by virtue of Dr. Muller's findings. For this reason, the plaintiff's first argument is without merit.

### Claim that ALJ Erred in Rejecting Dr. Naqvi's Opinion

Plaintiff Shaw's next allegation is that the ALJ erred in rejecting the opinion of psychiatrist Dr. Naqvi. The opinion at issue is Dr. Naqvi's conclusory declaration that plaintiff Shaw is unable to do any work at all and could not be expected to recover for at least 12 months. According to plaintiff Shaw, the ALJ's allegedly erroneous rejection of Dr. Naqvi's opinion should be cause for reversal because the ALJ's stated reasons for rejecting the opinion, while explicit, were not legally adequate.

In support of this contention of inadequacy, plaintiff Shaw accuses the ALJ of, *inter alia*, inventing conflicts between Naqvi's opinion and other record evidence; erroneously failing to re-contact Dr. Naqvi on the basis that his treatment notes were only partially legible; improperly and

prematurely rejecting Dr. Naqvi's ultimate conclusion concerning plaintiff's degree of disability; and wrongly concluding that Dr. Naqvi's opinion contradicted that of Dr. Muller. Plaintiff Shaw concludes this argument by contending that reversal is warranted by any one of the foregoing assertions.

Plaintiff Shaw is mistaken. Under the relevant regulations, when an ALJ discounts a treating physician's opinion, the ALJ must explicitly and adequately articulate the reasons for the decision. This requirement, of course, is because the opinion of a treating physician is usually entitled to controlling weight. There is, however, a caveat to this practice of affording controlling weight to the opinion of a treating physician. That is, in order for such an opinion to properly be given controlling weight, it must, *inter alia*, be well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the record as a whole. 20 C.F.R. § 416.927(d)(2) (2008).

In the case at bar, plaintiff Shaw concedes that the ALJ's reasons for discounting Dr. Naqvi's opinion were explicit. Therefore, the only remaining question is one of legal adequacy. In other words, the Court must review the ALJ's articulated stated reasons for discounting Dr. Naqvi's opinion to determine whether or not he complied with the relevant regulations. This analysis is of a technical nature and does not permit the Court to interject its own judgment about the facts, even if those judgments would differ from those of the ALJ. Having completed this analysis, the undersigned concludes that the ALJ's articulated reasons for discounting Dr. Naqvi's opinion are both legally adequate and supported by substantial evidence. Accordingly, this argument is without merit.

### Claim that the ALJ Failed to Carry the Commissioner's Step-Five Burden

In her brief, plaintiff Shaw argues that the ALJ erred in Step Five of his analysis. Specifically, she contends that the ALJ's hypothetical question to the vocational expert was not sufficiently comprehensive insofar as it failed to account for the limitations found by Dr. Muller and/or the fact that she wears wrist splints. Based upon this assertion, plaintiff Shaw concludes that

the vocational expert's response does not constitute substantial evidence.

Having reviewed this argument, the relevant language of the hypothetical questions posed by the ALJ to the vocational expert, and the record as a whole, the undersigned finds no merit in the plaintiff's argument: the ALJ's hypothetical inquiry sufficiently accounted for all of the plaintiff's limitations. That is, the hypothetical involved a claimant whose limitations included, *inter alia*, the ability to perform only simple tasks with no more than limited public contact and with no more than frequent handling or fingering. This language incorporates the plaintiff's limitations as properly found by the ALJ. Accordingly, the vocational expert's response constitutes substantial evidence which supports the ALJ's decision.

### Claim that the ALJ Improperly Evaluated Plaintiff's Credibility

Before addressing the particular arguments made by the plaintiff in support of this contention, it is important to note that it is well settled that a claimant's *subjective* complaints of disabling limitations, without more, are insufficient to prove disability. That is, subjective accounts must be supported by evidence of an underlying medical condition along with either objective medical evidence confirming the severity of the alleged limitation arising from that condition or medical evidence that the objectively determined medical condition is of a severity that could reasonably be expected to give rise to the alleged limitation. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991); 20 C.F.R. Sections 404.1508 and 404.1529. Furthermore, an ALJ can reject such testimony if he articulates explicit and adequate reasons for doing so. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

In support of her claim that the ALJ failed to evaluate her subjective complaints under the proper legal standard, plaintiff Shaw offers three arguments. First, she argues that the ALJ improperly concluded that the plaintiff repeatedly failed to follow her physicians' instructions with

-6-

respect to taking certain prescribed medications. To support this argument, the plaintiff points out that the "printout" cited by the ALJ covers only a portion of the relevant time period and therefore does not reveal the entire picture. Notwithstanding the accuracy of this statement, it is simply unnecessary for an ALJ to identify and cite each and every piece of record evidence which supports his conclusion. This is particularly true in instances such as this one wherein the plaintiff has repeatedly admitted her failure to fully comply with her regimen of prescription medication treatment. R. at 570 and 688. For this reason, this argument is without merit.

Plaintiff Shaw's second argument is that the ALJ improperly engaged in "sit and squirm" jurisprudence. That is, plaintiff Shaw contends that the ALJ improperly relied upon his own observations of her friendly manner, concentration, memory, and mobility in making his credibility assessment and that any such reliance is impermissible. Plaintiff's "sit and squirm" argument is without merit. A review of the ALJ's decision reveals that, while he did memorialize certain personal observations about the plaintiff, his assessment of her credibility is properly founded upon an evaluation of the evidence.

Plaintiff Shaw's third and final argument is that the ALJ failed to properly consider her obesity and the various other medical conditions that may be brought about or aggravated thereby. In support of this argument, plaintiff, after conceding that the ALJ identified the correct regulatory provisions for considering obesity, attacks the ALJ by asserting that he elevated form over substance. In what can only be categorized as an argument in semantics, she attempts to show that the ALJ's observations about her failure to even attempt to lose weight are somehow contrary to an admonition contained in SSR 02-1p. This admonition identifies a common misconception about the goal of treatment for obesity. The misconception is that the goal of treatment for obesity is the reduction of weight to a "normal" level, whereas the "realistic medical treatment" goal is for the

patient to lose a sufficient amount of weight to improve his or her health and quality of life.

Despite the plaintiff's inference to the contrary, the undersigned has not been able to locate any language in the ALJ's decision addressing plaintiff's failure to reduce her weight to a "normal" level. Instead, the apparent reason for the ALJ's comments about the plaintiff's obesity appears to be to highlight her non-compliance with prescribed and/or recommended medical treatment. For purposes of this discussion, and in the context of a credibility assessment, a person's decision not to comply with prescribed medical treatment which could alleviate some or all of the complained of symptoms is relevant. That is, when an individual claims to be suffering from disabling symptoms, logic dictates that the individual would avail himself/herself of available treatment to alleviate or mitigate the limiting effect of the symptoms. Where, as here, an individual chooses not to avail herself of such available treatment, the legitimacy and accuracy of her allegations about the limiting nature of the symptoms is properly called into question. Moreover, and while it defies logic that an individual would desire to suffer disabling symptoms despite available relief therefrom, the consequences of this decision should not burden anyone other than the individual at least insofar as disability payments are concerned.

Having addressed the foregoing arguments and after a review of the evidence of record, the Court finds that the ALJ's analysis is legally sound. Following his review of the evidence, the ALJ concluded that the plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, duration, and limiting effects of her symptoms were not entirely credible. Thereafter, and in accordance with the pertinent regulations, the ALJ listed several reasons for his conclusion. One example of the ALJ's reasoning is the incommensurate relationship between her alleged limitations and her daily activities.

Another example, as related to her alleged mental limitations, is the ALJ's observation that the plaintiff obtained a commercial driver's license and subsequently operated a bus filled with special needs children.  In light of these and the other reasons listed in the ALJ's decision, the undersigned concludes that finds the ALJ's assessment of the plaintiff's credibility is supported by substantial evidence.

For the foregoing reasons**, IT IS ORDERED** that the Commissioner's denial of benefits be **AFFIRMED**.

SO ORDERED AND DIRECTED, this 29th day of SEPTEMBER, 2009.



                                         S/ C. Ashley Royal
                                         C. ASHLEY ROYAL
                                         CHIEF UNITED STATES. DISTRICT JUDGE